[Cite as *State v. Watson*, 2011-Ohio-4556.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   10 MA 116 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| JERMAINE WATSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Criminal Appeal from Common Pleas
                                 Court, Case No. 09CR1110.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Paul Gains
                                 Prosecuting Attorney
                                 Attorney Ralph Rivera
                                 Assistant Prosecuting Attorney
                                 21 West Boardman Street, 6th Floor
                                 Youngstown, Ohio  44503


For Defendant-Appellant:         Attorney Jay Blackstone
                                 6600 Summit Drive
                                 Canfield, Ohio  44406


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: September 8, 2011

VUKOVICH, J.

¶{1} Defendant-appellant Jermaine Watson appeals from his convictions of aggravated robbery entered after a jury trial in the Mahoning County Common Pleas Court. He contends that the verdicts are contrary to the manifest weight of the evidence. However, there is no indication that the jury clearly lost its way in determining that the state's evidence was believable. As such, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

¶{2} Appellant was indicted on two counts of aggravated robbery each with a firearm specification based upon the statements of the two victims, Donald Mallet and Stewart McKenney. These victims testified at trial that they were Cleveland residents that wished to go to Youngstown so Mr. Mallet could purchase a vehicle from a certain car dealer. Mr. Mallet had recently met a female named Tiara, who was originally from Youngstown. On September 18, 2009, he paid her $50, and she drove him and Mr. McKenney to Youngstown. (Tr. 225).

¶{3} Upon arriving in Youngstown at approximately 10:00 a.m., Tiara stopped and picked up Donna Butler and appellant. Ms. Butler, who was intoxicated and described as talking crazy, took over driving. (Tr. 227). She went to a store on the East Side to purchase wine. She then returned to her house as Tiara stated she needed to use the restroom. (Tr. 231). Appellant went into the residence as well. Mr. Mallet was nervous about the situation and switched seats so appellant would not be behind him when he returned. When they returned to the vehicle, Ms. Butler drove around stating that she needed to locate appellant's friend's house for him.

¶{4} Finally, appellant instructed Ms. Butler to stop. According to the victims, appellant then pointed a firearm at Mr. McKenney's head and threatened, "I don't want to kill nobody, but I will for the money." (Tr. 233, 293). Mr. McKenney stated that appellant patted him down and took a half a pack of cigarettes from him. (Tr. 294). Appellant expressed disappointment that Mr. Mallet did not have more money since he was intending to purchase a vehicle. Mr. Mallet testified that appellant took what

money he had and took his black bag containing personal information and a phone. He estimated that he had $150 on him that day, before giving Tiara $50. (Tr. 234).

¶{5} The victims were told to exit the vehicle and were left on the South Side of Youngstown. Mr. McKenney immediately called the police on his telephone. A captain arrived and helped the victims' trace their paths. They eventually located the store on the East Side, and Mr. Mallet soon noticed appellant standing outside at a nearby house. (Tr. 243). The captain noticed that appellant and his clothing matched the description Mr. Mallet had provided to him. (Tr. 369, 385). When the captain approached the residence, appellant ran. The captain and Mr. McKenney gave chase on foot, and Mr. Mallet followed in the captain's police vehicle. A canine unit assisted, and appellant was apprehended.

¶{6} The captain heard appellant whispering to the victims that he would get their belongings back if they told the police that he was not the suspect. (Tr. 375). When appellant was searched, the captain discovered a half of a pack of cigarettes of the type Mr. McKenney smoked and $192. (Tr. 380, 414). During questioning, appellant told the captain that it was the two females who stole $120 from the victims and disclosed that they threw the black bag out the window of the vehicle. (Tr. 377-378). He also repeatedly asked the captain if he could "get out of" the offense if he retrieved the victims' belongings. (Tr. 378).

¶{7} A jury found appellant guilty as charged. On June 22, 2010, the court sentenced appellant to five years on each count to run consecutively plus three years of actual incarceration for one of the firearm specifications for a total of thirteen years in prison. Appellant filed the within timely appeal.

ASSIGNMENT OF ERROR

¶{8} Appellant's sole assignment of error provides:

¶{9} "THE DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

¶{10} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all

reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.

¶{11} A reversal on weight of the evidence is ordered only in exceptional circumstances. Id. In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

¶{12} In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore* (1999), 131 Ohio App.3d 197, 201. Rather, we defer to the jury who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. See *Seasons Coal Co. v. Cleveland* (1994), 10 Ohio St.3d 77, 80; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

¶{13} Appellant urges that the testimony of Ms. Butler was more plausible than that of the two victims. Although the victims' statements were nearly identical, appellant notes that they both have felony records and that they both served time in prison. Appellant focuses on Ms. Butler's testimony that someone mentioned marijuana and then the three males then alighted from the vehicle. She said that appellant discussed marijuana with Tiara, who became angry that drugs were involved. Ms. Butler testified that appellant then re-entered the vehicle, and they left Mr. Mallet and Mr. McKenney on the street. She testified that she would have been aware if a robbery had occurred in the vehicle. (Tr. 462).

¶{14} However, in an erratic statement, she told police that she may not have been aware if a robbery occurred. (Tr. 389, 460). Plus, the victims testified that the females stepped out of the van during the robbery. Furthermore, Ms. Butler told police

that she was intoxicated at the time and that she had recently been released from a psychological clinic where she was treated for her bipolar disorder. (Tr. 389). It is also notable that appellant slept over Ms. Butler's house the night before the incident, whereas she had never met the victims before. (Tr. 437).

¶{15} Appellant asks the court to ponder why he would leave Mr. McKenney in the possession of his cell phone after robbing him of his cigarettes. Appellant also states that the drug transaction testimony is more plausible because Mr. Mallet would not carry a small black duffel bag to buy a car. However, the captain confirmed that Mr. Mallet had called the indicated car lot twice that morning to obtain directions. Moreover, even a drug transaction would not preclude the existence of a robbery.

¶{16} Appellant notes that he was arrested within an hour of the alleged offense and that the $192 he possessed at the time of his arrest was in the following denominations: one hundred dollar bill, four twenty dollar bills, and eleven one dollar bills. The police captain testified that Mr. Mallet estimated that he had approximately $150 in the following denominations: five to six twenty dollar bills, some tens, two fives, and nineteen ones. (Tr. 414). Appellant states that this indicates that Mr. Mallet was not credible because it makes no sense that appellant would convert the stolen money into a hundred dollar bill during the hour after the alleged robbery.

¶{17} However, Mr. Mallet testified that he told the officer that he had four to five twenties and some tens, fives, and ones. (Tr. 255-256). He also testified that he started out with approximately $150 but by the time of the robbery he had already given $50 to Tiara for driving him to Youngstown. (Tr. 234).

¶{18} As the state points out, the victims' version of events could be believed even if appellant had no money on him at the time of his arrest. The arrest occurred nearly an hour after the incident. He had left the presence of the two women and was in the presence of other individuals. That he possessed a one hundred dollar bill (among other denominations) does not indicate that he did not rob the victims. Notably, the other denominations totaled $92, which is near the amount Mr. Mallet testified was stolen from him. It is for the jury to determine whether appellant may have already possessed the $100 bill and the other denominations were the stolen

bills or whether the stolen bills were already paid to someone else or whether appellant changed the bills in for a large bill.

¶{19} This case presented weight and credibility issues. The jury was free to choose to believe the testimony of Mr. Mallet and Mr. McKenney. Their testimony corroborated each other. The testimony of Ms. Butler could be seen as lacking in credibility and biased in favor of appellant. In addition, she was considered to have been intoxicated on the morning of the incident and in fact was drinking more alcohol during the offense. In conclusion, the jury did not clearly lose its way, and there exists no manifest miscarriage of justice. This assignment of error is overruled.

¶{20} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.